# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| ALISHA L. FORD, | : No. 13 WAP 2016 |
| | : |
| Appellant | : Appeal from the Order of the Superior |
| | : Court entered December 30, 2015 at |
| | : No. 1800 WDA 2014, affirming the |
| v. | : Order of the Court of Common Pleas of |
| | : Westmoreland County entered October |
| | : 17, 2014 at No. 3733 of 2013. |
| AMERICAN STATES INSURANCE | : |
| COMPANY, | : ARGUED: November 2, 2016 |
| | : |
| Appellee | : |

## OPINION

**JUSTICE BAER**                    **DECIDED: FEBRUARY 22, 2017**

Section 1731 of the Motor Vehicle Financial Responsibility Law ("MVFRL") governs underinsured motorist ("UIM") and uninsured motorist coverage. 75 Pa.C.S. § 1731. Pertinent to this appeal, the MVFRL requires insurers to offer insureds UIM coverage.[1] Id. at § 1731(a). Insurers need to inform named insureds that they may reject UIM coverage by signing a written rejection form contained in Subsection 1731(c) of the MVFRL. Id. § 1731(c). Subsection 1731(c.1) of the MVFRL states that any UIM coverage rejection form that does not "specifically comply" with Section 1731 of the MVFRL is void and that, if an insurer fails to produce a valid UIM coverage rejection

---

[1] The MVFRL describes UIM coverage as follows: "Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S. § 1731(c).

form, then UIM coverage shall be equal to the policy's bodily injury liability limits.  Id. at § 1731(c.1).  We granted allowance of appeal in this matter to determine whether an insurer's UIM coverage rejection form does "specifically comply" with Section 1731 of the MVFRL if the insurer's form is not a *verbatim* reproduction of the statutory rejection form found in Subsection 1731(c) of the MVFRL but, rather, differs from the statutory form in an inconsequential manner.  For the reasons that follow, we hold that a UIM coverage rejection form specifically complies with Section 1731 of the MVFRL even if the form contains *de minimis* deviations from the statutory form.  Because the Superior Court reached the proper result in this case, we affirm that court's judgment.

The facts underlying this matter are undisputed.  Audrey Ford ("Mother") is the mother of Appellant Alisha Ford ("Appellant").  Mother purchased a policy of motor vehicle insurance from Appellee American States Insurance Company ("American States"), insuring a 2000 Chevrolet Cavalier.  At all times relevant to this matter, Appellant was an insured under Mother's policy because she was a resident of Mother's household.  Importantly, Mother signed a UIM coverage rejection form on August 10, 2011, and neither she nor Appellant paid premiums for UIM coverage.

On March 19, 2013, Appellant was driving the 2000 Chevrolet Cavalier in Union Township, Pennsylvania, when she collided with another vehicle.  Appellant suffered personal injuries as a result of the accident.  The driver of the other vehicle ("Tortfeasor") was responsible for the accident.  Tortfeasor's automobile insurance company paid Appellant the liability policy limit of $25,000.  Appellant subsequently sought UIM coverage from American States under Mother's policy.  However, because Mother had signed a UIM coverage rejection form, American States refused to provide UIM coverage to Appellant.

On July 17, 2013, Appellant filed a complaint for declaratory judgment against American States.  In her complaint, Appellant averred that, pursuant to Subsection

1731(c) of MVFRL, a named insured may reject UIM coverage by signing the following form:

**REJECTION OF UNDERINSURED MOTORIST PROTECTION**

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

75 Pa.C.S. § 1731(c).

Appellant highlighted that Subsection 1731(c.1) of the MVRFL instructs an insurer that its UIM coverage rejection form must "specifically comply" with Section 1731 of the MVFRL or the form is void. 75 Pa.C.S. § 1731(c.1).[2] Appellant further noted that the same subsection of the MVFRL requires an insurer to produce a valid UIM coverage rejection form; otherwise, the insurer must provide UIM coverage equal to the policy's bodily injury liability limits. Id.

---

[2] Subsection 1731(c.1) of the MVFRL states, in full, as follows:

**(c.1) Form of waiver.--**Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. <u>Any rejection form that does not specifically comply with this section is void.</u> If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S. § 1731 (emphasis added).

As Appellant noted in her complaint, the UIM coverage rejection form that Mother signed and that American States relied upon when Appellant sought UIM benefits tracks the statutory rejection form found in Subsection 1731(c) of the MVFRL, save for a few minor deviations. The form at issue in this case references "motorists" instead of "motorist" in its title line and first sentence, and it injects the word "motorists" between "Underinsured" and "coverage" in the second sentence. Thus, with the deviations from the statutory language emphasized, it reads:

### REJECTION OF UNDERINSURED MOTORIST<u>S</u> PROTECTION

> By signing this waiver I am rejecting underinsured motorist<u>s</u> coverage under this policy, for myself and all relatives residing in my household. Underinsured <u>motorists</u> coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

Appellant's Complaint, 7/17/2013, Exhibit 3 (emphasis added).

In her complaint, Appellant took the position that the UIM coverage rejection form that Mother signed is void because it fails to "specifically comply" with the rejection form contained in the MVFRL, due to the minor discrepancies between the statutory form and the policy's form. Accordingly, Appellant sought an order from the trial court declaring that American States must provide her with UIM coverage equal to the bodily injury liability limits of her Mother's policy.

The trial court eventually ordered the parties to file any stipulations of fact and competing motions for summary judgment. The parties complied with the court's order. In support of her motion for summary judgment, Appellant reasserted the argument that she presented in her complaint, contending that Subsection 1731(c.1) of the MVFRL clearly and unambiguously requires a UIM rejection form to "specifically comply" with Section 1731 of the MVFRL and that the form in question fails to do so; therefore, the

form is void, and she is entitled to UIM coverage. Appellant supported her position by citing to case law from this Court and the Superior Court.

Regarding this Court's precedent, Appellant cited Lewis v. Erie Insurance Exchange, 793 A.2d 143 (Pa. 2002), specifically referring to a footnote where this Court quoted the United States District Court for the Middle District of Pennsylvania which stated, "Section 1731(c.1) imposes something akin to strict liability on insurers who do not follow the legislature's guidelines on the proper format for rejection forms . . . ." Lewis, 793 A.2d at 153 n.14 (quoting Leymeister v. State Farm Mut. Auto. Ins. Co., 100 F.Supp.2d 269, 272 (M.D. Pa. 2000)).

As to Superior Court decisions, Appellant first referenced American International Insurance Co. v. Vaxmonsky, 916 A.2d 1106 (Pa. Super. 2006). The insurer in Vaxmonsky deleted from its UIM coverage rejection form the word "all" from the phrase "all losses and damages." See 75 Pa.C.S. § 1731(c) (stating, in the statutory rejection form, that "[u]nderinsured motorists coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages") (emphasis added). The Vaxmonsky court concluded that the form was void, because the court could not find that the insurer specifically complied with Subsection 1731(c.1) of the MVFRL.[3] Vaxmonsky, 916 A.2d at 1109. In so doing, the Vaxmonsky court determined that, by omitting the word "all" from its UIM coverage rejection form, the insurer improperly limited coverage and created ambiguity in its form. Id.

---

[3] For the sake of accuracy, we observe that the Vaxmonsky court, in what appears to be a typographical error, mistakenly asserted that it could not find that the insurer "specifically complied with Section 1738(c.1)," rather than Subsection 1731(c.1). Vaxmonsky, 916 A.2d at 1109. Section 1738 of the MVFRL addresses the stacking of UIM and uninsured coverage and does not contain a subsection (c.1). 75 Pa.C.S. § 1738.

Appellant next turned to the Superior Court's opinion in Jones v. Unitrin Auto & Home Insurance Co., 40 A.3d 125 (Pa. Super. 2012). The UIM coverage rejection form in Jones tracked the statutory rejection form contained in Subsection 1731(c) of the MVFRL. However, at the end of the body of the form, but before the date and signature lines, the insurer added to its rejection form the following sentence: "By rejecting this coverage, I am also signing the waiver on P. 13 rejecting stacked limits of underinsured motorist coverage." Jones, 40 A.3d at 128. The Jones court examined the additional sentence in terms of its "proximal relationship" to the language that tracked Subsection 1731(c) and the required signature and date lines that were to follow this language. Id. at 129-30. The Jones court ultimately held that "additions to the prescribed language, and deviation from the proximal relationship of the components, of the UIM rejection form required by 75 Pa.C.S.[ ] § 1731 fail to specifically comply with the statute and is consequently void." Id. at 131 (footnote omitted).

In arguing that she was entitled to summary judgment, Appellant generally maintained that the case law summarized above stands for the proposition that, to "specifically comply" with Section 1731 of the MVFRL, an insurer's UIM coverage rejection form must be a "copy and paste," *verbatim* reproduction of the statutory rejection form found in Subsection 1731(c) of the MVFRL. See, e.g., Appellant's Brief in Support of Appellant's Motion for Summary Judgment, 8/20/2014, at 9 ("The insurer need only copy and paste a mere 72 words from section 1731, and if it fails to do this simple task, the UIM limits will equal the limits on the policy."). Because the UIM coverage rejection form at issue in this case does not exactly reflect the form contained in the MVFRL, Appellant argued that the policy's form is invalid. Thus, Appellant posited that she is entitled to a declaration that American States must provide her with UIM coverage.

With respect to its motion for summary judgment, American States argued that its UIM coverage rejection form is valid because it does "specifically comply" with Section 1731 of the MVFRL. In support of its position, American States turned to case law from a court of common pleas and federal courts.

American States initially relied upon a decision from the Court of Common Pleas of Philadelphia County, Rosas-Ramirez v. Bristol West Insurance Co., 2013 Phila.Ct.Com.Pl. Lexis 450. The insurer's UIM coverage rejection form in Rosas-Ramirez tracked the statutory form, except it added an "S" to the end of "MOTORIST" in the title line of the form. The Rosas-Ramirez court concluded that the additional "S" constituted a typographical error and that the insurer's form was valid because it specifically complied with Section 1731 of the MVFRL.

An example of federal case law relied upon by American States is an opinion from the United States Court of Appeals for the Third Circuit, Robinson v. Travelers Indemnity Co., 520 Fed.Appx. 85 (3d Cir. 2013). The rejection form at issue in Robinson was exactly the same as the form in this case - it used "motorists" instead of "motorist" in its title line and first sentence, and it injected the word "motorists" between "Underinsured" and "coverage" in the second sentence. The insured argued that, because the insurer's rejection form included the word "motorists," the form was void as it was noncompliant with the text of the statutory rejection form.

In disagreeing with the insured, the Third Circuit observed that the MVFRL does not define the phrase "specifically comply" and that courts have not been uniform in their treatment of UIM coverage rejection forms that add language to the statutory form. Robinson, 520 Fed.Appx. at 88. As to the specific circumstances in the case, the court reasoned that the addition of the word "motorists" into the rejection form did not introduce any ambiguity and, in fact, made the form consistent with the rest of the MVFRL. Id. While the court opined that it is a better practice for insurance companies

not to supplement the statutory language of the MVFRL's rejection form, the court nonetheless concluded that the insurer's rejection form was valid because: it included the entirety of the statutory text; the addition of the word "motorists" did not introduce ambiguity into the form and did not alter the scope of the coverage;[4] and the form indisputably did not contravene any party's understanding of the intended coverage.[5]

American States also argued that the cases cited by Appellant, such as Vaxmonsky and Jones, are consistent with American States' position that its rejection form is valid. In this regard, American States posited that the invalid forms at issue in Vaxmonsky and Jones injected ambiguity and invited confusion into the rejection forms; whereas, the UIM coverage rejection form in question here did little more than add clarity to the form.

Based upon this case law and argument, American States insisted that its UIM coverage rejection form specifically complies with Section 1731 of the MVFRL. Accordingly, American States asked the trial court to enter an order granting its motion for summary judgment and declaring that Appellant is not entitled to UIM coverage for the March 2013 accident.

The trial court entered an order denying Appellant's motion for summary judgment, granting American States' motion for summary judgment, and declaring that Appellant is not entitled to UIM coverage for the March 2013 accident. The court

---

[4] When reaching its conclusion that the insurer's rejection form specifically complied with Section 1731 of the MVFRL, the Robinson court distinguished the Superior Court's decisions in Jones and Vaxmonsky, reasoning that neither of the concerns presented in those cases (injecting ambiguity into the form and separating the statutory language from the signature and date lines) were present. Robinson, 520 Fed.Appx. at 88-89.

[5] In Appellant's brief in support of her motion for summary judgment, she argued that the trial court should not rely upon Robinson in ruling on the parties' motions for summary judgment because Robinson is a non-binding federal case that, according to Appellant, is inconsistent with Pennsylvania precedent such as Vaxmonsky and Jones.

authored an opinion in support of its order. Therein, the court, like the Third Circuit in Robinson, acknowledged that the MVFRL does not define "specifically comply" and that courts have not been uniform in determining whether forms which add language to the statutory rejection form "specifically comply" with Section 1731 of the MVFRL. The court then examined the case law cited by both parties.

In so doing, the trial court first considered the Superior Court's decision in Vaxmonsky, *i.e.*, the case in which the court concluded that a UIM coverage rejection form was void because it omitted "all" from the phase "all losses and damages," creating ambiguity in the form. The trial court opined that the Vaxmonsky court's analysis suggests that the effect of an omitted or added word is a factor to consider when determining whether a rejection form specifically complies with Section 1731 of the MVFRL.

Next, the trial court turned its attention to the Superior Court's opinion in Jones, *i.e.*, the case in which the court deemed void a rejection form that added, between the end of the form and the insurer's signature and dateline, the following sentence: "By rejecting this coverage, I am also signing the waiver on P. 13 rejecting stacked limits of underinsured motorist coverage." The trial court observed that the Jones court's analysis focused upon the additional language's "proximal relationship" to the statutory language of Subsection 1731(c) of the MVFRL.

In addition, the trial court found persuasive the Third Circuit's opinion in Robinson, which, as detailed above, involved a UIM coverage rejection form that mirrors the form at issue in this case. Indeed, in finding American States' form to be valid, the trial court essentially modeled its holding after the Third Circuit's holding in Robinson. More specifically, the court observed that the rejection form in the case *sub judice* contains only one additional word - "motorists." The court opined that this term is directly related to the rejection of UIM coverage and eliminates, rather than

exacerbates, any perceived ambiguity. The trial court noted that the form did not alter the "proximal relationship" between the language of the statutory rejection form and the mandated date and signature lines. The court, therefore, concluded that the addition of "motorists" to the form's second sentence did not inject any ambiguity into the form.

Lastly, the court highlighted that there is no evidence which suggests that Mother was confused by the addition of the word "motorists" into the rejection form. In this regard, the court observed that Mother's policy clearly and unambiguously states that she rejected UIM coverage. See Appellant's Complaint, 7/17/2013, Exhibit 1, at 1 (listing the declarations of Mother's policy and stating, *inter alia*, that "Uninsured Motorists and/or Underinsured Motorists has been REJECTED") (emphasis in original). Thus, the court determined that Mother knowingly and voluntarily rejected UIM coverage by signing the UIM coverage rejection form and that she now is seeking to recover a benefit for which she never bargained nor paid.

On appeal to the Superior Court, Appellant argued that the trial court erred by determining that the UIM coverage rejection form specifically complied with Section 1731 of the MVFRL, given that the form inserted additional language into the statutory rejection form. In an unpublished memorandum, the Superior Court affirmed the trial court's order by adopting the trial court's opinion. Ford v. Am. States Ins. Co., 135 A.3d 670 (Pa. Super. 2015) (unpublished memorandum).

Appellant subsequently filed in this Court a petition for allowance of appeal, which the Court granted to consider the question that follows:

> Did the Superior Court err in affirming the summary judgment order and holding that the insurer's underinsured motorist coverage rejection form "specifically complies" with Subsection 1731(c) of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1731(c)?

Ford v. Am. States Ins. Co., 137 A.3d 573 (Pa. 2016).

It is unnecessary to explain the parties' arguments in detail, as they both present this Court with the same substantive arguments that they put forward in the trial court in support of their motions for summary judgment and, again, before the Superior Court. In short, Appellant insists that the Court should interpret Subsection 1731(c.1) of the MVFRL to require insurers to produce UIM coverage rejection forms that are *verbatim* reproductions of the statutory form. In Appellant's view, to hold otherwise would thwart the General Assembly's intent in promulgating the subsection. Indeed, according to Appellant, even if equity dictates that an imperfect form should be upheld as valid, the MVFRL nonetheless mandates that the imperfect form is void. Appellant suggests that, if an insured wishes to waive UIM coverage, then the insurer must print the statutory rejection form and have the insured sign it. See 75 Pa.C.S. § 1731(c.1) (providing that "[i]nsurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location").

Stated succinctly, American States relies on the case law discussed above and takes the position that an insurer's UIM coverage rejection form specifically complies with Section 1731 of the MVFRL if the insurer's form simply adds minor word deviations that do not create ambiguity, alter the scope of coverage, or contravene the insured's understanding of the coverage that she is rejecting. In American States' view, the lower courts correctly concluded that its form specifically complies with the statute, as the form's altered language does not modify the substance of the statutory rejection form.

We begin our analysis by recognizing the well-settled principles that govern summary judgment. If a party moves for summary judgment, a court may enter judgment only when there is no genuine issue of any material fact regarding a necessary element of the cause of action or defense that could be established by additional discovery. Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005). A motion for summary judgment is based on an evidentiary record that entitles the moving party to a

judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and the court should resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Lastly, a court may grant summary judgment only when the right to such a judgment is clear and free from doubt. Id. An appellate court may reverse an order granting a motion for summary judgment if there has been an abuse of discretion. Id. n. 3.

In order to answer the question presented in this appeal, the Court must interpret the MVFRL. This Court's interpretation of all statutes is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Further, we observe that issues of statutory interpretation present this Court with questions of law; accordingly, the Court's standard of review is *de novo*, and its scope of review is plenary. Pennsylvania Pub. Util. Comm'n v. Andrew Seder/The Times Leader, 139 A.3d 165, 172 (Pa. 2016).

Section 1731 of the MVFRL governs underinsured and uninsured motorist coverage. 75 Pa.C.S. § 1731. The MVFRL explains that UIM coverage must "provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." Id. at § 1731(c). The MVFRL mandates that insurers offer to insureds UIM coverage; however, the purchase of UIM coverage is optional. Id. at § 1731(a).

As set forth above, the MVFRL further instructs that insurers must inform insureds that they may reject UIM coverage by signing the following rejection form:

**REJECTION OF UNDERINSURED MOTORIST PROTECTION**

> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

Id. at § 1731(c).

Subsection 1731(c.1) of the MVFRL is central to the issue presented in this appeal. Most importantly, that subsection provides, "Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits." Id. at § 1731(c.1).

The focus of this appeal is on determining what the General Assembly intended when it stated, "Any rejection form that does not specifically comply with this section is void." Id. at § 1731(c). We acknowledge that there is surface appeal to Appellant's argument that insurers' UIM rejection forms must exactly reflect the statutory rejection form to comply with Section 1731 of the MVFRL. See, e.g., id. at § 1731(c.1) (providing that "[i]nsurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location"). However, contrary to Appellant's position, the General Assembly simply did not mandate that UIM coverage rejection forms must be *verbatim* reproductions of the statutory rejection form found in Subsection 1731(c) of the MVFRL. Rather, the General Assembly adopted language which requires UIM rejection forms to "specifically comply" with "this section," *i.e.*, Section 1731 of the MVFRL, as juxtaposed to mandating that the form *verbatim* follow the statutory rejection form. Id. at § 1731(c.1). In other words, an insurer's UIM coverage rejection form is valid so long as the form specifically complies with Section 1731 of the MVFRL.

A review of the various subsections of Section 1731 of the MVFRL makes obvious the General Assembly's intent in promulgating the section. Specifically, Section 1731 of the MVFRL clearly and unambiguously expresses the General Assembly's intention to require an insurer to offer to an insured the option of purchasing UIM coverage and to make certain that, if an insured decides to reject UIM coverage, the insured does so by signing a rejection form that explains what coverage the insured is waiving as a result of her decision.

It is indisputable that, if an insured waives UIM coverage by signing a *verbatim* reproduction of the rejection form contained in Subsection 1731(c) of the MVFRL, the General Assembly's objectives are fulfilled, as a signature on that form evinces that the insurer offered the insured UIM coverage and the insured opted out of that coverage. For this reason, it is ill-advised for an insurer to present an insured with a UIM coverage rejection form that changes the statutory form in any way.

However, when a UIM rejection form differs from the statutory form in an inconsequential manner, the form will be construed to specifically comply with Section 1731 of the MVFRL. Unlike the forms at issue in <u>Vaxmonsky</u> and <u>Jones</u>, such a form does not modify coverage or inject ambiguity into the statutory form, and an insured's signature on the slightly altered form demonstrates that the insurer offered UIM coverage to the insured and that the insured understood what she was doing when she declined that coverage. Accordingly, we hold that a UIM coverage rejection form specifically complies with Section 1731 of the MVFRL even if the form contains *de minimis* deviations from the statutory rejection form found at 75 Pa.C.S. § 1731(c).[6]

---

[6] The Dissent expresses the view that this Opinion ignores the rules of statutory construction by misinterpreting Subsection 1731(c.1) as allowing insurers to utilize UIM rejection forms that "substantially comply" with the statutory rejection form, rather than construing Subsection 1731(c.1) consistent with its plain language, which according to the Dissent, mandates that UIM rejection forms are void if they differ in any manner whatsoever from the statutory rejection form. In the words of the Dissent, this Opinion (continued…)

Consequently, the trial court correctly entered an order granting summary judgment in favor of American States and declaring that Appellant is not entitled to UIM coverage, and the Superior Court properly entered a judgment affirming the trial court's order. We, therefore, affirm the judgment of the Superior Court.

Chief Justice Saylor and Justices Dougherty, Wecht and Mundy join the opinion.

Justice Donohue files a dissenting opinion in which Justice Todd joins.

---

(…continued)
"opts for a 'close is good enough' approach," permitting insurers to "use any form that adequately conveys the substance of the statutorily prescribed forms." Dissenting Opinion at 4.

We believe that the views expressed herein and in the Dissent represent a good faith difference of opinion. However, we respectfully suggest that it is the Dissent which declines to apply the statutory language analyzed herein. In its final paragraph, the Dissent concludes, "[T]he express language of Section 1731 prohibits any changes to the legislatively drafted forms set forth in subsections (b) and (c)." Id. at 7. As amply demonstrated both here and in the Dissent, this is simply not so. The Legislature directed that rejection forms "specifically comply" with this statute. If the Legislature wanted to provide that UIM forms used by insurers must be "verbatim," then it certainly could have said so. Instead, the Legislature requires UIM rejection forms to specifically comply with the statutory rejection form, and consistent with this requirement, we conclude that specific compliance allows for forms that contain *de minimis*, inconsequential deviations from the statutory rejection form, *i.e.*, typos, such as here, where the UIM rejection form merely references "motorist<u>s</u>" instead of "motorist" in its title line and first sentence and injects the word "motorists" between "Underinsured" and "coverage" in the second sentence. It is not our view that the statute should be broadly construed to permit the use of "any form that adequately conveys the substance of the statutorily prescribed forms." Dissenting Opinion at 4.